IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DONALD R. VINING-EL,

    Plaintiff,

  v.

JO ANNE B. BARNHART, as Commissioner of the Social Security Administration,

    Defendant.

No. C 04-04513 WHA

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this social security appeal, the Court finds that substantial evidence supports the conclusion of the administrative law judge that plaintiff was not disabled. Accordingly, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**.

## STATEMENT

**1. PROCEDURAL HISTORY.**

On November 25, 2002, plaintiff Donald Vining-El applied for disability insurance benefits under Title II, alleging he was unable to work since December 29, 2001, due to obesity, diabetes mellitus, hypertension, liver impairments and pain in his left shoulder and back (AR 99–108). Plaintiff was insured through March 31, 2004. His application was denied both initially and upon reconsideration (AR 69–72, 77–80). An administrative hearing was timely requested (AR 81).

1   On May 10, 2004, plaintiff had a hearing before ALJ Robert P. Wenten (AR 25–66). The ALJ rendered his decision on May 26, 2004, finding that plaintiff was not disabled (AR 14–19). The ALJ found that plaintiff had the severe impairments of obesity and diabetes mellitus, but that he also had the residual functional capacity to perform a wide range of work at all exertional categories, except for work at heights or around dangerous moving machinery (AR 16–17). Plaintiff requested administrative review (AR 10). The Appeals Council denied the request (AR 5–7). Plaintiff filed an action before this Court on October 26, 2004, seeking judicial review pursuant to 42 U.S.C. 405(g). The parties now make cross-motions for summary judgment.

**2.   TESTIMONY AT THE ADMINISTRATIVE HEARING.**

At the hearing before the ALJ, plaintiff testified that he was not currently employed. He stated that he received disability income from the Veteran's Administration for service-related injuries to his shoulder, headaches, high blood pressure, and scars from his time serving in the Navy. After serving in the military, plaintiff held a number of jobs through 2002 (AR 31–35). Plaintiff had been treated by the VA for various ailments and had received several surgical procedures for his injuries (AR 37–39).

Plaintiff indicated that he has difficulty stretching his left shoulder and feels burning pain when he attempts to raise his arm past the top of his shoulder (AR 39–41). As a result, he has trouble clothing and grooming himself (AR 40–42). Plaintiff testified that his driver's license had been suspended because he has a tendency to lose consciousness while driving (AR 42–43). He said that after losing consciousness at home on several occasions, he injured his knee, shoulder, back and lacerated his head and back. (AR 48–49). Plaintiff is unable to care for his three young children, and must rely on his mother-in-law to do so (AR 44–45). Plaintiff indicated that he also takes several medications to control his diabetes (AR 45–47). When asked which medical conditions arose during his service in the military, plaintiff explained that he had surgery for a ruptured blood vessel in his chest and also to repair a hernia, in addition to developing high blood pressure, gastric reflux and contracting Hepatitis C (AR 52–55). Plaintiff also had several glandular cysts removed from his neck (AR 55).

The ALJ then inquired about what skills plaintiff had from his time in the military that would be applicable to the civilian job market. Plaintiff explained that his specialty in the Navy was explosives and handguns, and that he was responsible for a machine gun on a special-operations boat (AR 61–62). While plaintiff had been trained generally as a seaman, the ALJ acknowledged that this experience might not be readily applicable to the civil maritime industry (AR 64–65).

No medical expert or vocational expert testified.

### 3. MEDICAL EVIDENCE.

The medical evidence was summarized in the ALJ's decision (AR 16–17). This order will also briefly review both plaintiff's self-reported symptoms and the findings of each physician who examined him.

In plaintiff's disability report filed on November 25, 2002, plaintiff claimed that his leg and shoulder pain, hypertension, and diabetes rendered him unable to work (AR 100). He alleged that he could not stand up for long periods of time, his knee and head hurt when he climbed stairs, and his blood-sugar levels caused him to be dizzy and faint (AR 100–01). He indicated that although he began to notice the pain in 1992, he was able to work until December 29, 2001 (AR 100). He explained that during the time he was able to work, he often missed work if his blood-sugar was unstable or if his leg or shoulder hurt (AR 100). He had seen several doctors for his hypertension, diabetes and shoulder pain (AR 102–05).

In his reconsideration disability report submitted on May 28, 2003, plaintiff indicated that he had experienced no change in his medical condition since the filing of his initial application (AR 119). He had continued to see VA doctors, however, for ongoing treatment and medication (AR 120). Plaintiff's statement submitted with his request for an administrative hearing listed a variety of drugs including Atenolol, Metformin, Glyburide, Vicodin and Avandia which had been prescribed to control the diabetes, hypertension and muscle pain (AR 102–05, 141–43). Plaintiff indicated that the pain in his left shoulder had increased and his movement was more limited (AR 141). His episodes of dizziness were also more frequent (AR 141).

3

1    The ALJ also considered the reports of the reviewing physicians, Dr. Sandra Battis and Dr. H. Haveliwala (AR 217–19, 276–78).  On January 17, 2003, Dr. Battis found that plaintiff's impairments were not severe (AR 218–19).  She also found that there was no medical evidence to support the allegation that plaintiff's various ailments would hinder his ability to work for twelve months or more  (AR 218).  Dr. Haveliwala confirmed Dr. Battis' previous conclusion that plaintiff's impairments were not severe (AR 277–78).

The administrative record also included plaintiff's medical records from the VA Martinez, Contra Cost Regional Medical, and Pittsburg Health Center (AR 146–386).  The medical records cover the period from July 2001 through January 2004 (AR 146–386).

## ANALYSIS

**1.    LEGAL STANDARD.**

A decision denying disability benefits must be upheld if it is supported by substantial evidence and free of legal error.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Substantial evidence is "more than a scintilla," but "less than a preponderance." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ibid.*  The Court must "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews*, 53 F.3d at 1039.  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities;" thus, where the evidence is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld.  *Ibid.*

The claimant has the burden of proving disability.  *Id.* at 1040.  Disability claims are evaluated using a five-step inquiry.  20 C.F.R. 404.1520.  In the first four steps, the ALJ must determine:  (i) whether the claimant is working, (ii) the medical severity and duration of the claimant's impairment, (iii) whether the disability meets any of those listed in Appendix 1, and (iv) whether the claimant is capable of performing his or her previous job; step five involves a determination of whether the claimant is capable of making an adjustment to other work.  20 C.F.R. 404.1520(a)(4)(i)–(v).  In step five, "the burden shifts to the Secretary to show that the

4

1  claimant can engage in other types of substantial gainful work that exists in the national
2  economy." *Andrews*, 53 F.3d at 1040.

3        The use of the Medical-Vocation Guidelines, at step five is proper "where they
4  *completely and accurately* represent a claimant's limitations" and the claimant can "perform the
5  *full* range of jobs in a given category." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)
6  (emphasis in original). Although "the fact that a non-exertional limitation is alleged does not
7  automatically preclude application of the grids," the ALJ must first determine whether the
8  "claimant's non-exertional limitations significantly limit the range of work permitted by his
9  exertional limitations." *Id.* at 1102.

10        **2.  THE ALJ'S FIVE-STEP ANALYSIS.**

11        In his decision, the ALJ found at step one of the sequential evaluation process that while
12  there were some indications that plaintiff had been employed in the interim period, there was
13  insufficient evidence to find that he had performed any substantial gainful activity for more than
14  twelve continuous months since the alleged disability onset date (AR 15). The ALJ noted that
15  although it was inconclusive whether plaintiff had been unemployed, the evidence suggesting
16  that he had been able to work served to undermine his allegation that this disability was severe.

17        At step two, the ALJ concluded that plaintiff's diabetes mellitus and obesity were severe
18  medically-determinable impairments (AR 16). In contrast, however, the ALJ determined that
19  the remainder of plaintiff's allegedly disabling impairments were not shown to adversely affect
20  his ability to work. Plaintiff's hypertension had been "nicely controlled" since July 2002
21  (AR 15). While plaintiff's testimony and medical records demonstrated a decreased range of
22  motion along with slightly decreased sensation and strength in his left shoulder, there was no
23  evidence of any medically-determinable impairment associated with the joint (AR 15). Finally,
24  the ALJ noted that there was no evidence that plaintiff suffered from, or had sought treatment
25  for, any mental impairment or depression (AR 16). Consequently, the ALJ determined that
26  plaintiff's testimony which alleged severe impairments associated with hypertension,
27  musculoskeletal injuries, and depression was not credible in light of the extensive record
28  (AR 16).

At step three, the ALJ determined that none of plaintiff's alleged or proven impairments met or equalled any listed impairment (AR 16). At steps four and five, the ALJ found that plaintiff had the residual functional capacity to perform a wide range of work at all exertional levels, noting that there was some evidence that plaintiff had continued to work since the onset of his alleged disability and that plaintiff had been intentionally non-compliant with his diabetes treatment regimen (AR 17). The ALJ noted at step four that plaintiff might no longer be able to work at heights or around dangerous moving machinery. At step five, the ALJ held that even assuming plaintiff was precluded from work at heights or with dangerous machinery, plaintiff should not be considered disabled (AR 18). Plaintiff's youth, education, and RFC for a wide range of work at all exertional levels indicated that he could be employed in any number of jobs (AR 18). The ALJ therefore found that plaintiff was not disabled at step five of the sequential procedure.

Plaintiff argues that the ALJ erred in (1) finding that plaintiff's shoulder and muscle strain, liver disorders, and hypertension did not constitute a "severe" impairment in combination at step two of the sequential evaluation process and (2) failing to include this limitation in his evaluation of plaintiff's residual functional capacity. This order disagrees.

**3. THE ALJ DID NOT ERR IN FINDING THAT PLAINTIFF HAD NO "SEVERE" IMPAIRMENT STEMMING FROM MUSCULOSKELETAL PROBLEMS, HYPERTENSION, OR LIVER DISORDERS.**

Plaintiff asserts that the ALJ incorrectly considered each impairment individually at step two (Br. 14). Plaintiff insists that the ALJ is required to consider all of a claimant's impairments in combination to determine if plaintiff is disabled (Br. 14). Plaintiff also argues that the ALJ is required to consider plaintiff's impairments in combination when making the residual functional capacity determination (Br. 14).

It is true that plaintiff alleged many more impairments than the ALJ found medically determinable. But the fact that plaintiff alleged such ailments does not require the ALJ to find them severe. Plaintiff had the burden of proving that he was disabled based on one or more medically-severe impairments. The ALJ is not required to consider all alleged ailments at step two, but instead must determine if a plaintiff's medically-proven illnesses severely impair his

6

1    ability to perform basic work activities.  Plaintiff was required to do more than assert that he
2    had an injury.  He was required to prove that he had one or more physical or mental illnesses
3    and that those illnesses substantially limited his ability to work.  *Andrews*, 53 F.3d at 1040.
4        The ALJ explicitly assessed each of the alleged impairments and found that plaintiff had
5    proven only two that significantly limited plaintiff's ability to perform basic work activities
6    when viewed in combination, namely diabetes and obesity.  While the ALJ discussed each
7    ailment individually, he did not analyze them in isolation.  The ALJ reviewed the entire
8    administrative record, replete with extensive medical records from the VA and opinions from
9    reviewing physicians.  The ALJ found that plaintiff did suffer from hypertension, but that it was
10   controlled, and therefore did not serve to limit his ability to work.  The ALJ also found that
11   while plaintiff alleged shoulder and leg injuries, the medical records and plaintiff's employment
12   history rebutted his assertion that he was unable to work due to musculoskeletal problems.
13   Additionally, the ALJ found that there was no evidence aside from plaintiff's testimony to
14   support the assertion of a limiting mental impairment.  This argument was also undermined by
15   the fact that plaintiff had never sought treatment for depression and had continued to work.  In
16   the end, the ALJ found that these additional asserted conditions were either not
17   medically-determinable (shoulder, leg, and mental ailments) or not significantly limiting
18   (hypertension).  Moreover, plaintiff's medical records that demonstrated that he suffers from
19   liver disease stemming from Hepatitis C were dated June 24, 2004, a month after the ALJ's
20   decision (AR 387).  That diagnosis was therefore unavailable to the ALJ at that time.  In any
21   event, there was no indication that plaintiff was limited by this disease or suffered from any
22   side-effects from the treatment.
23       More importantly, the ALJ did not end his analysis at step two.  By finding that plaintiff
24   was significantly limited by diabetes and obesity, the ALJ continued with all five steps of the
25   sequential analysis before concluding that plaintiff was not disabled.  In so doing, the ALJ
26   noted that the primary factor he considered in his analysis was the medical evidence, which
27   contradicted some of plaintiff's assertions.  The ALJ also specifically recognized that even
28   considering plaintiff's allegations of pain and decreased range of motion, plaintiff was still able

to perform a wide range of work at all exertional levels (AR 18). The ALJ relied upon Social Security Ruling 85-15 to explain that even if plaintiff was restricted from working at heights or around dangerous machinery, he was not significantly limited from working (AR 18). Because plaintiff was relatively young, educated, skilled and could still fulfill the full range of employment functions, the ALJ cited Rule 204.00 of the Medical-Vocational Guidelines and found that plaintiff was not disabled (AR 18).

Because the ALJ appropriately found at step two that plaintiff's alleged shoulder and leg problems were not a medically determinable impairments, failing to include these limitations in the analysis of plaintiff's residual functional capacity was not error. Likewise, omitting hypertension because plaintiff's medical records demonstrated that it was being controlled was also proper. Finally, the failure to consider evidence of liver disease which was presented only after the issuance of the ALJ's decision did not constitute error.

This order finds that substantial evidence supports the ALJ's conclusion at step five that plaintiff was not disabled because he was capable for performing a wide range of work at all exertional levels.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**. Judgment will be entered accordingly.

**IT IS SO ORDERED.**

Dated: May 13, 2005

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE